IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VINCENT PACELY,

       Plaintiff,

vs.                                No. 2:12-CV-00152-MCA-SMV

MARCK LOCKETT and GERALD
CHAMPION MEDICAL CENTER

       Defendants.

MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Motion to Remand* [Doc. 16]. Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court grants *Plaintiff's Motion to Remand* [Doc. 16] and remands this case back to the First Judicial District of the County of Rio Arriba, State of New Mexico.

## I.   BACKGROUND

Vincent Pacely (Plaintiff) filed a *Complaint for Personal Injuries* [Doc. 1-1] alleging the following relevant facts.  "On September 1, 2011, Plaintiff was riding his 2003 Honda motorcycle Eastbound on U.S. Highway 70 in Otero County, New Mexico at approximately 8:00 pm."  [Doc. 1-1 at 1] "Plaintiff stopped and positioned his motorcycle in the median in order to wait for other riders." [Doc. 1-1at 2] "Defendant Mark Lockett came along behind him at a high rate of speed in a white 1991 Porsche and swerved into

the median striking the rear of Plaintiff's motorcycle." [Doc. 1-1 at 2] As a consequence, "Plaintiff's vehicle was totaled, and he suffered severe personal injuries including, but not limited to, losing his left leg above the knee, losing his right leg below his knee and Plaintiff was in a coma for an extended period of time." [Doc. 1-1 at 2]

Plaintiff filed his *Complaint for Personal Injuries* [Doc. 1-1] in the First Judicial District of the County of Rio Arriba, State of New Mexico, seeking compensatory and punitive damages against Defendant Lockett based on Defendant Lockett's alleged negligence and negligence per se.  On February 17, 2012, Defendant Lockett removed the case to this Court on the basis of diversity jurisdiction, because Defendant Lockett is a citizen of Arizona, Plaintiff is a citizen of New Mexico, and the amount in controversy exceeds $75,000. [Doc. 1]

On March 13, 2012, Plaintiff filed a *First Amended Complaint for Personal Injuries* pursuant to Fed. R. Civ. P. 15(a)(1)(B), which permits a plaintiff to amend his complaint once, as a matter of course, within twenty-one days of the service of a responsive pleading. [Doc. 15] Plaintiff's *First Amended Complaint for Personal Injuries* [Doc. 15-1] raised a claim of vicarious liability against Plaintiff's alleged employer, Gerald Champion Regional Medical Center (Gerald Champion), alleging that "Defendant Gerald Champion Regional Medical Center is vicariously liable to Plaintiff for the negligent acts and/or omissions of Lockett under the doctrine of respondeat superior." [Doc. 15-1 at 5] Thereafter, Plaintiff filed *Plaintiff's Motion to Remand* [Doc. 16], contending that "because Gerald Champion is a domestic corporation, headquartered in

2

New Mexico, there is not complete diversity in this action and remand to state court is respectfully appropriate and warranted." [Doc. 16 at 2]

Defendant Lockett opposed *Plaintiff's Motion to Remand* and also filed *Defendant Lockett's Motion to Reject Plaintiff's First Amended Complaint and to Deny Joinder* [Doc. 20] contending that, because this is a removed case and the addition of Gerald Champion would destroy diversity jurisdiction, the Court should "analyze whether to deny joinder of Gerald Champion pursuant to 28 U.S.C. § 1447(e)." See 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."). Defendant Lockett contends that joinder should be denied under Section 1447(e) because there is no reasonable possibility of recovery against Gerald Champion, since Gerald Champion is not Defendant Lockett's employer and Defendant Lockett was not in the course and scope of employment at the time of the motor vehicle accident.

## II.   STANDARDS AND ANALYSIS

Federal law provides that the United States District Courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. See 28 U.S.C. § 1332(a). An action initially brought in a state court may be removed to a federal district court pursuant to the authority set forth in 28 U.S.C. § 1441, which states, in pertinent part, that

[e]xcept as otherwise expressly provided by Act of Congress, any civil

action brought in a State Court of which the district courts of the United
States have original jurisdiction, may be removed by the defendant or the
defendants, to the district Court of the United States for the district and
division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Removal statutes are strictly construed, and any doubts about the propriety of
removal are resolved in favor of remand. See City of Neodesha v. BP Corp. N. Am., 355
F.Supp.2d 1182, 1185 (D. Kan. 2005) (quoting Boyer v. Snap-on Tools Corp., 913 F.2d
108, 111 (3rd Cir.1990)). When removal is challenged, the burden rests with the
removing party to prove that jurisdiction exists. In this regard, diversity jurisdiction
depends upon all parties to one side of the case having a different citizenship from all
parties to the opposing side. Id.

It is undisputed that federal jurisdiction existed at the time of removal because the
parties (Defendant Lockett and Plaintiff) were completely diverse and the amount in
controversy exceeds $75,000. See Pfeiffer v. Hartford Fire Ins. Co., et al, 929 F.2d 1484,
1488 (10th Cir. 1991) (noting that "the propriety of removal is judged on the complaint as
it stands at the time of the removal"). However, subject matter jurisdiction must exist not
only at the time of removal, but throughout the pendency of the proceedings. See 28
U.S.C. § 1447© ("If at any time before final judgment it appears that the district court
lacks subject matter jurisdiction, the case shall be remanded."). Plaintiff's *First Amended
Complaint for Personal Injuries* added additional claims against a non-diverse defendant,
Gerald Champion, which destroyed the complete diversity of the parties. Plaintiff

4

contends that diversity jurisdiction no longer exists and, therefore, the case must be remanded to state court pursuant to 28 U.S.C. § 1447©.  Defendant Lockett responds that, because "this is a removed case, the proper procedure for Plaintiff should have been to file a Motion for Leave to Amend to join an additional nondiverse party" pursuant to 28 U.S.C. § 1447(e). [Doc. 21 at 1-2]  Analyzing Plaintiff's *First Amended Complaint for Personal Injuries* under Section 1447(e), Defendant Lockett contends that joinder of Gerald Champion should be denied because there is no reasonable possibility of recovery against Gerald Champion, since Plaintiff was not an employee of Gerald Champion and was not acting within the course and scope of his employment at the time of the motor vehicle accident.

Fed. R. Civ. P. 15(a)(1)(B) permits a plaintiff to amend his complaint once as a matter or course within twenty-one days after the service of a responsive pleading.  See Fed. R. Civ. P. 15(a)(1)(B) ("A party may amend its pleading once as a matter of course within . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.").  However, Section 1447(e) provides the district court with the discretion to deny the joinder of an additional defendant after removal who would destroy subject matter jurisdiction.  See 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").  Under Section 1447(e), the Court has only two options: (1) deny joinder,

5

or (2) permit joinder and remand that action to state court.  Id.  As the Fourth Circuit

Court of Appeals recognized in <u>Mayes v. Rapoport</u>, 198 F.3d 457, 462 n.11 (4th Cir.

1999), "if the plaintiff can add a non-diverse defendant [under Rule 15(a)] without the

district court exercising its discretion over whether the defendant should be joined, then,

under § 1447(e), the district court would be forced to remand the case without

determining the propriety of joinder."  Under these circumstances, "§ 1447(e) conflicts

with Rule 15(a)."  Id.

> The Tenth Circuit Court of Appeals has not had an opportunity to address and

resolve this conflict.  However, in <u>Mayes</u> the Fourth Circuit Court of Appeals held as

follows:

> Reading Rule 15(a) in connection with Fed.R.Civ.P. 19 and 21, and 28
> U.S.C. § 1447(e), resolves any doubts over whether the district court has
> authority to pass upon any attempts—even those for which the plaintiff
> needs no leave of court—to join a nondiverse defendant. <u>See</u> 28 U.S.C. §
> 1447(e) ("the court may deny joinder, or permit joinder"); <u>see also</u>
> Fed.R.Civ.P. 19(a) ("A person who is subject to service of process and
> whose joinder will not deprive the court of jurisdiction over the subject
> matter of the action shall be joined as a party ...") (emphasis added);
> Fed.R.Civ.P. 21 ("Parties may be dropped or added by order of the court on
> motion of any party or of its own initiative at any stage of the action and on
> such terms as are just."). Thus, a district court has the authority to reject a
> post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the
> joinder was without leave of court. <u>See Ascension Enters., Inc. v. Allied
> Signal, Inc.</u>, 969 F.Supp. 359, 360 (M.D.La.1997) (holding that court has
> authority under § 1447(e) to reject Rule 15(a) amendment that,
> post-removal and without leave of court, seeks to add nondiverse
> defendant); <u>Whitworth v. TNT Bestway Transp. Inc.</u>, 914 F.Supp. 1434,
> 1435 (E.D.Tex.1996) (same); <u>cf. Pfeiffer v. Hartford Fire Ins. Co.</u>, 929 F.2d
> 1484, 1488 (10th Cir.1991) (rejecting assumption that "a party may force
> remand of an action after its removal from state court by amending the
> complaint to destroy the federal court's jurisdiction over the action.").

Id.  The analysis in Mayes is consistent with the weight of authority, which holds that "a

party may not employ Rule 15(a) to interpose an amendment that would deprive the

district court of jurisdiction over a removed action."  6 Federal Practice & Procedure, §

1477 (3d ed. 2012).  It is also consistent with the Tenth Circuit's observation in Pfeiffer,

929 F.2d at 1488, that a party may not "force remand of an action after its removal from

state court by amending the complaint to destroy the federal court's jurisdiction over the

action."  See id. (rejecting the plaintiff's argument that a case was improvidently removed

due to the post-removal joinder of non-diverse defendants, without analyzing Section

1447(e)).  Pursuant to Mayes and Pfeiffer, the district courts in the Tenth Circuit

consistently have held that "in a removed case a plaintiff cannot file an amended

complaint without leave of the Court if doing so would destroy diversity jurisdiction."

Reigel v. Canyon Sudar Partners, LLC, et al., No. 07-cv-00595-MSK-MJW, 2007 WL

3274430, at * 2 (D. Colo. Nov. 5, 2007); see also Baumeister v. Home Depot U.S.A.,

Inc., et al, No. 10-cv-02366-LTB-MJW, 2011 WL 650338, at *2-3 (D. Colo. Feb. 11,

2011) (analyzing the post-removal joinder of a non-diverse defendant under Fed. R. Civ.

P. 15(a) under Section 1447(e)).  Accordingly, the Court will apply the principles of

Section 1447(e) to determine whether the joinder of the non-diverse defendant, Gerald

Champion, should be permitted in this case.

A.      Section 1447(e)

        Section 1447(e) "provides no standards to guide the federal courts in exercising

their discretion."  16 Moore's Federal Practice § 107.41[2][d][i][B] (3d ed. 2012).

7

However, in <u>McPhail v. Deere & Co.</u>, 529 F.3d 947, 952 (10th Cir. 2008), the Tenth

Circuit Court of Appeals articulated the following standards:

> [U]nder Rule 19 the district court must determine whether the party sought
> to be joined is indispensable.  If so, Rule 19 requires the court either to join
> the party, in which case remand is necessary under § 1447(e), or to deny
> joinder, in which case Rule 19(b) also requires that the action be dismissed.
> If the defendant is not indispensable, Rule 20(a)(2) permits joinder at the
> discretion of the district court.  <u>See State Distrib., Inc. v. Glenmore Distill.
> Co.</u>, 738 F.2d 405, 416-17 (10th Cir. 1984).  In exercising this discretion,
> the district court "typically considers several factors [including] whether the
> amendment will result in undue prejudice, whether the request was unduly
> and inexplicably delayed, [and whether it] was offered in good faith....'" <u>Id.</u>
> at 416.

<u>McPhail</u>, 529 F.3d at 951-52 (10th Cir. 2008).

Defendant Lockett contends that joinder should be denied pursuant to the

fraudulent joinder doctrine, because there is no reasonable possibility of recovery against

Gerald Champion.[1]  In particular, Defendant Lockett contends that the undisputed facts

---

[1] The Court notes that the Fourth and Fifth Circuit Courts of Appeals have held that the
fraudulent joinder doctrine does not apply to a Section 1447(e) analysis because the doctrine
"does not apply to joinders that occur *after* an action is removed." <u>Cobb v. Delta Exports, Inc</u>.,
186 F.3d 675, 677 (5th Cir. 1999) (emphasis in original); <u>Mayes</u>, 198 F.3d at 463 (holding that
the fraudulent joinder doctrine "does not directly apply after removal because the district court
already possesses jurisdiction").  Nonetheless, both Courts agree that "[a] request to join a party
against whom recovery is not really possible and whose joinder would destroy subject matter
jurisdiction (i.e., a request fraudulently to join a party) would never be granted" under Section
1447(e).  <u>Cobb</u>, 186 F.3d at 678; <u>Mayes</u>, 198 F.3d at 463 (holding that "if the defendants can
carry the heavy burden of proving fraudulent joinder, that fact should be a factor–and perhaps
the dispositive factor–that the court considers in deciding whether a plaintiff may join a
nondiverse defendant" under Section 1447(e)).  Because the parties have briefed the issue
exclusively under the fraudulent joinder doctrine, and because it is generally agreed that this
doctrine may be the "dispositive factor" in a Section 1447(e) analysis, <u>Mayes</u>, 198 F.3d at 463,
the Court analyzes Plaintiff's claim against Gerald Champion under the fraudulent joinder
doctrine consistent with the briefing.

establish that he was not an employee of Gerald Champion and that he was not acting within the course and scope of his employment at the time of the motor vehicle accident. Plaintiff responds that Defendant Lockett is unable to establish fraudulent joinder because there is a valid basis in law and fact for the addition of Gerald Champion as a party.

B.      *Fraudulent Joinder*

        "While issues of liability may not ordinarily be determined on a motion to remand, it is well settled that upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal."  Smoot v. Chicago, R.I. & P. R. Co., 378 F.2d 879, 881-82 (10th Cir. 1967).  Specifically, "upon specific allegations of fraudulent joinder the court may pierce the pleadings . . . consider the entire record, and determine the basis of joinder by any means available."  Dodd v. Fawcett Publ'n, Inc., 329 F.2d 82, 85 (10th Cir. 1964) (citations omitted).  "The joinder of a resident defendant against whom no cause of action is stated is patent sham . . . and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists."  Id. (citations omitted).  "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty."  Smoot, 378 F.2d at 882.

        Thus, the removing party bears a heavy burden to prove fraudulent joinder.  The fraudulent joinder standard "is more exacting than that for dismissing a claim under Fed. R. Civ. P. 12(b)(6); indeed, the latter entails the kind of merits determination that, absent

9

fraudulent joinder, should be left to the state court where the action was commenced."

Montano v. Allstate Indemnity, No. 99-2225, 2000 WL 525592, at *2 (10th Cir. April 14,

2000) (unpublished opinion); see also Batoff v. State Farm Ins. Co., 977 F.2d 848, 852

(3d Cir. 1992) (holding that "the inquiry into the validity of a complaint triggered by a

motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a

party makes a claim of fraudulent joinder").  In assessing a claim of fraudulent joinder,

the Court "must initially resolve all disputed questions of fact and all ambiguities in the

controlling law in favor of the non-removing party." Montano, 2000 WL 525592, at *2

(quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir.2000)).  "[I]f any one of the

claims against the non-diverse defendant . . . is possibly viable," then "remand is

required."  Montano, 2000 WL 525592, at *2.

 With these principles in mind, the Court will analyze whether Plaintiff has any

reasonable possibility of recovery against Gerald Champion on his vicarious liability

claim.  "Under the doctrine of respondeat superior, an employer can be held vicariously

liable for the negligent actions of an employee who is acting within the scope of his

employment."  Lessard v. Coronado Paint and Decorating Center, Inc., 168 P.3d 155, 160

(N.M. App. 2007).  However, "[o]ne who employs an independent contractor is not liable

for the wrongful acts or omissions of the contractor."  UJI 13-404 NMRA.  "New Mexico

courts have employed an agency analysis to determine whether an individual is acting as

an independent contractor or as an employee."  Celaya v. Hall, 85 P.3d 239, 242 (N.M.

2004). To conduct an agency analysis, New Mexico has adopted the Restatement of Torts

(Second) of Agency § 220 (1958), which "suggests a number of considerations for

determining whether an individual is acting as an employee or independent contractor,

only one of which is the degree of control the principal exercises over the details of the

agent's work." <u>Celaya</u>, 85 P.3d at 243.

> Other considerations include: 1) the type of occupation and whether it is
> performed without supervision; 2) the skill required for the occupation; 3)
> whether the employer supplies the instrumentalities or tools for the person
> doing the work; 4) the length of time the person is employed; 5) the method
> of payment, whether by time or job; 6) whether the work is part of the
> regular business of the employer; 7) whether the parties intended to create
> an employment relationship; and 8) whether the principal is engaged in
> business.  Furthermore, a complete analysis may require an assessment not
> only of the relevant factors enumerated in the Restatement, but of the
> circumstances unique to the particular case.

> [N]o particular factor should receive greater weight than any other, except
> when the facts so indicate, nor should the existence or absence of a
> particular factor be decisive.  Rather, the totality of the circumstances
> should be considered in determining whether the employer has the right to
> exercise essential control over the work or workers of a particular
> contractor.

<u>Id.</u> (citations omitted). "Whether the employer exercises sufficient control to be held

liable for the acts of the employee is a question of fact that must be submitted to the jury

unless there are no issues of material fact regarding the employment relationship between

the parties." <u>Keith v. ManorCare, Inc.</u>, 218 P.3d 1257, 1262-63 (N.M. App. 2009).

Notably, "the manner in which the parties designate a relationship is not

controlling, and if an act done by one person on behalf of another is in its essential nature

one of agency, the one is the agent of the other, notwithstanding he is not so called."

<u>Robertson v. Carmel Builders Real Estate</u>, 92 P.3d 653, 660 (N.M. App. 2003) (quoting

Chevron Oil Co. v. Sutton, 515 P.2d 1283, 1285 (N.M. 1973); see Houghland v. Grant,

891 P.2d 563, 566 (N.M. App. 1995) (holding that "contractual provisions do not control

the determination of whether Dr. Grant was an employee or an independent contractor.

Instead of defining the relationship by the terms which Northeastern and Spectrum

assigned to it, we will view the facts of this case to determine whether sufficient facts

were introduced so that a rational jury could find that Northeastern should be held

vicariously liable for Dr. Grant's actions."); Cullen v. Aubrey, Nos. 28,557, 28,868, 2010

WL 3970917, at *3 (N.M. App. Jan. 29, 2010) ("An individual is not legally defined as an

employee simply because he declares himself as such.").

      New Mexico courts have observed that "the right to control approach may not

always be the most appropriate test, particularly for a professional." Celaya, 85 P.3d at

242-43. In Houghland, the New Mexico Court of Appeals analyzed whether an

emergency room physician was an employee or an independent contractor at the

defendant hospital.  The physician was employed by an independent staffing agency and

had no employment relationship with the hospital.  891 P.2d at 565.  However, the

hospital provided "space, equipment, and supplies for the operation of the emergency

room" and required physicians "to comply with all policies, bylaws, rules, and

regulations" of the hospital." Id.  The Court observed that "[i]n the context of hospital

emergency rooms . . . the right to control test is not always the most helpful test." Id. at

567.  "Requiring a physician to comply with a hospital's policies and procedures does not

*per se* indicate that the hospital has sufficient control over the physician to indicate an

employer-employee relationship." Id.  "By requiring compliance with its policies and procedures, a hospital may be merely contributing to the maintenance of professional standards, not controlling the physician." Id.  Accordingly, the Court focused on whether to impose liability on the hospital under the doctrine of apparent authority, "rather than on the strict legal relationship between" the parties.  Id.

In response to *Plaintiff's Motion to Remand*, Defendant Lockett submitted an affidavit in which he averred, in relevant part, that he was "not an employee of Gerald Champion," he "only had clinical privileges at Gerald Champion," he was employed as "a 1099 Independent Contractor through a temporary staffing agency called Emcare, Inc." and that he "received payment for [his] services as a medical doctor by Emcare" [Doc. 21-4] However, Defendant Lockett's characterization of his employment relationship with Gerald Champion is not controlling; the Court  may consider the entire record and "determine the basis of joinder by any means available." Dodd, 329 F.2d at 85 (citations omitted).   The "Emergency Department Services Agreement between Gerald Champion and Emcare" is a part of the record in this case.  [See Doc. 62-2]  The Agreement provides in relevant part as follows:

C.    Selection and Termination of Emergency Providers.

      1.      Prior to engaging any Emergency Provider for the purpose of providing services under this Agreement, Contractor shall notify Hospital.  Hospital may reject any Emergency Provider, in which case Contractor shall not engage such Provider.

      2.      Hospital may, in its reasonable discretion and for good cause,

request that Contractor cease utilizing any specific Emergency Provider in connection with Contractor's performance of its obligations under this Agreement, in which case Contractor shall cease utilizing said Provider not later than ninety (90) days from the date of Hospital's request.

D.   <u>Medical Staff Privileges</u>.  Emergency Providers presented by Contractor to Hospital for the purpose of providing coverage in the Emergency Department shall (i) maintain appropriate licensure in the state of New Mexico to provide services at Hospital, (ii) be and remain a member of the active staff of the Hospital's Medical Staff with appropriate, unlimited clinical privileges and maintain such stature throughout the term of this agreement, and (iii) participate in regular Medical Staff activities and responsibilities consistent with the Staff Bylaws of Hospital ("Bylaws").  Contractor shall perform initial interviews, review credentials and references and provide to Hospital a compilation of qualifications and other information for administrative review and the Hospital reserves the right to reject any potential candidate.  Physician candidates accepted by Hospital shall be granted Medical Staff Privileges ("Staff Privileges") in accordance with the standard rules and regulations of the Medical Staff, except that neither Contractor nor any physician candidate (or Emergency Provider) shall be responsible for any fees charged by Hospital or Medical Staff in conjunction with applying for or maintaining Staff Privileges.  Hospital shall be entitled to require that all medical professional candidates complete the Hospital's standard application documents including, without limitation, standard waivers and releases.  All Emergency Providers shall complete electronic medical records training as certified by the Clinical Information Systems (CIS) representative prior to providing services in the Emergency Department.  Hospital agrees not to discriminate in granting privileges to qualified physician candidates identified by Contractor and shall use its best efforts to process all applications for Medical Staff Privileges in a timely manner. Physicians granted Staff Privileges shall receive the rights and privileges and be subject to the responsibilities of membership on Hospital's Medical Staff; provided however, an Emergency Provider shall (iv) not have the privilege of admitting or treating in-patients, (v) will agree to write time-limited holding orders for admitting medical staff physicians, (vi) in all events be subject to removal from the Medical Staff, if applicable, for the reasons identified in the

> Bylaws, and (vii) lose any Medical Staff Membership automatically
> when such Emergency Provider is no longer authorized by
> Contractor to serve as an Emergency Provider.

[Doc. 62-2 at 5-6]

Pursuant to the Agreement, Gerald Champion agreed to provide the "[p]hysical space, now or hereafter designated as the Emergency Department at Hospital," "[s]ervices such as suction, sterilization and oxygen;" and "[s]ervices of nurses and other paramedical personnel." [Doc. 62-2 at 8] Gerald Champion also reserved the right to "reject any Emergency Service Provider," require Emergency Providers to "remain a member of the active staff of the Hospital's Medical Staff," to require Emergency Providers "to participate in regular Medical Staff activities and responsibilities consistent with the Staff Bylaws of Hospital ("Bylaws")," and to remove Emergency Providers "for the reasons identified in the Bylaws." [Doc. 62-2 at 5-6] Given that Gerald Champion supplied the physical space and instrumentalities and reserved a degree of control over Defendant Lockett's work as an Emergency Provider, the Court concludes that Defendant Lockett has failed to fulfill his heavy burden to prove that there is no reasonable possibility of an employment relationship between himself and Gerald Champion. Although admittedly "the right to control approach may not always be the most appropriate test" for an emergency room professional, Celaya, 85 P.3d at 242-43, the Court nonetheless is required to "resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party." Montano, 2000 WL 525592, at *2 (quoting Hart v. Bayer Corp., 199 F.3d 239, 246 (5th Cir.2000)). Construing all

15

ambiguities in the facts and law in favor of Plaintiff, the Court concludes that there is a

reasonably possibility that an employment relationship between Defendant Lockett and

Gerald Champion existed.

Assuming, without deciding, that Defendant Lockett was an employee of Gerald

Champion, the Court next addresses whether there is a reasonable possibility that

Defendant Lockett was acting within the course and scope of his employment at the time

of the accident.  New Mexico courts have "rejected the use of any bright-line tests for

determining if an employee was acting within the scope of his employment."  Lessard,

168 P.3d at 160.  Instead, the courts use "a multifactored test to consider scope of

employment."  Id.  Under the multifactored test,

> [a]n employee's action, although unauthorized, is considered to be in the
> scope of employment if the action (1) is the kind the employee is employed
> to perform; (2) occurs during a period reasonably connected to the
> authorized employment period; (3) occurs in an area reasonably close to the
> authorized area; and (4) is actuated, at least in part, by a purpose to serve
> the employer.

Id. (quoting Narney v. Daniels, 846 P.2d 347, 355 (N.M. App. 1992).  "A determination

regarding scope of employment is a question of fact for the jury when sufficient evidence

exists to show that the employee was acting within the scope of his employment."  Id.

The New Mexico Supreme Court has held "that an employee en route to, or

returning from, his place of employment using his own vehicle is not within the scope of

his employment absent additional circumstances evidencing control by the employer at

the time of the negligent act or omission of the employee."  Nabors v. Harwood Homes,

Inc., 423 P.2d 602, 603 (N.M. 1967).  This "general rule precludes imposing vicarious

liability on an employer for its employee's negligent use of a personal vehicle while

driving to and from work."  Lessard, 168 P.3d at 161.  In Lessard, the Court of Appeals

identified

> three circumstances that must exist in order to impose vicarious liability on
> an employer for an employee's negligent actions in driving a personal
> vehicle to and from work: (1) the employer must expressly or impliedly
> consent to the use of the vehicle; (2) the employer must have the right to
> control the employee in his operation of the vehicle, or the employee's use
> of the vehicle must be so important to the business of the employer that
> such control could be inferred; and (3) the employee must be engaged at the
> time in furthering the employer's business.

Id. at 162.  All three circumstances must be satisfied in order to impose vicarious liability

on the employer.  Id. at 162-65.

In Lessard, the defendant employer, Coronado Paint and Decorating Center, Inc.,

(Employer) had contracted with Barry Fennell (Employee) "to perform tile repair services

on the Rancho Viejo home building development, and a couple of other locations."  Id. at

586.  Employer had never lent Employee a vehicle, Employee never drove one of

Employer's company vehicles, and the manner in which Employee was supposed to get to

job sites was never discussed.  Id.  On November 20, 2000, Plaintiff and Employee were

involved in a motor vehicle accident on Rancho Viejo Boulevard while Employee was on

his way home from work.  Id.  Plaintiff sued Employer, arguing that it was "liable under

theories of respondeat superior and negligent hiring and retention."  Id. at 586.

With respect to the first factor, consent to use, the Court of Appeals determined

that "sufficient evidence exists from which a jury could find that [Employer] consented to [Employee's] use of his vehicle." Id. at 590. The court pointed out that Employee was required to travel "from job site to job site" and that Employer "did not provide any other transportation for [Employee] or for the materials." Id. Additionally, the Court pointed out that Employer had "procured another vehicle specifically for [Employee] after the accident." Id. On the basis of these facts, the Court determined that "a jury could reasonably infer that [Employer] consented to [Employee's] use of his personal vehicle to travel from job site to job site in the performance of his duties." Id.

With respect to the second factor, control of the instrumentality, the Court observed that Employee's "personal vehicle could be considered essential to the performance of his duties as an employee because he was required to drive from job site to job site, even though [Employer] did not provide him with a vehicle." Id. Additionally, Employer's "weekly payment contract with [Employee] required him to insure the vehicle used in the performance of his duties and to name [Employer] as an additional insured." Accordingly, the Court determined that "the question of control over the operation of the vehicle is for the fact-finder." Id.

With respect to the final factor, furthering of Employer's business, the Court held that there was no "evidence that would support an inference that [Employee's] conduct at the time was in furtherance of [Employee's] business." Id. Employee was on his way home at the time of the accident. Because "the only evidence regarding the reasons for [Employee's] actions at the time of the accident was his testimony that he was driving

18

home," the Court held that Employee's "conduct arose entirely from this 'external, independent, and personal motive'" and, therefore, the trial court properly granted summary judgment in favor of Employer on Plaintiff's respondeat superior claim.

The parties dispute whether, pursuant to <u>Lessard,</u> there is a reasonable possibility that Plaintiff was acting within the course and scope of his employment at the time of the accident.  Plaintiff argues that he has stated a colorable claim against Gerald Champion because the hospital knew that Defendant Lockett was a resident of Arizona and it must have "either expressly or impliedly consented to the use of [Plaintiff's personal vehicle] and [Defendant] Lockett's use of the vehicle was so important to the business of the hospital that such control could be inferred." [Doc. 28 at 5] Additionally, unlike the employee in <u>Lessard</u>, Plaintiff contends that Defendant Lockett was furthering the business of his employer by driving to work at the time of the accident. [Id.] Defendant Lockett responds that his affidavit conclusively establishes that Gerald Champion did not consent to the use of his personal vehicle or control his personal vehicle and that he was not furthering any business of Gerald Champion at the time of the accident. [Doc. 21 at 8]

It is undisputed that, at the time of the accident, Plaintiff was driving his personal vehicle to work at Gerald Champion.  Additionally, Plaintiff avers in his affidavit that Gerald Champion never provided him with a vehicle, never told him what kind of vehicle to drive, never requested information about his vehicle, and did not control his route to and from work or his manner of driving. [Doc. 21-1] The Court concludes that these facts alone are insufficient to establish that Plaintiff has no reasonable possibility of recovery

19

against Gerald Champion on his vicarious liability claim.  Indeed, in <u>Lessard</u>, Employee

was driving his own personal vehicle from work and had not discussed his mode of

transportation with Employer.  Nonetheless, the Court held that, because travel was an

essential component of Employee's work, the Employer necessarily had consented to the

use of Employee's personal vehicle and the Employer's control over that vehicle could be

inferred.  In this case, it is unclear whether travel was an essential component of

Defendant Lockett's work for Employer.  Did Defendant Lockett travel to different

hospital sites or clinics on behalf of Gerald Champion?  Did Defendant Lockett travel to

visit patients on behalf of Gerald Champion?  Was Defendant Lockett furthering the

business of his employer by driving to work that day?  The answers to these questions are

unknown at this time.  Because all ambiguities in the facts and the law must be construed

in favor of Plaintiff, Defendant Lockett's fraudulent joinder claim must fail.  <u>See Smoot</u>,

378 F.2d at 882 (holding that the issue of fraudulent joinder "must be capable of summary

determination and be proven with complete certainty").

   There is no evidence to support Defendant Lockett's assertion that Plaintiff's *First

Amended Complaint for Personal Injuries* was filed for the sole purpose of defeating this

Court's diversity jurisdiction.  Although the timing of the filing is certainly suspect, the

Court cannot say that Plaintiff lacks a viable cause of action against Gerald Champion at

this stage of the proceedings and Defendant Lockett has failed to fulfill his heavy burden

of proving fraudulent joinder. Additionally, Plaintiff was not dilatory in filing his

amended complaint; indeed it was filed only fifteen days after Defendant Lockett's *Notice*

*of Removal*. <u>See Baummeister</u>, 2011 WL 650338, at * 4 (holding that the plaintiff's "filing was not dilatory in that it was filed directly after the notice to remove"). Under these circumstances "it is possible that Plaintiff would suffer significant injury if [his] claim" against Gerald Champion is not allowed to proceed and "there is a risk of parallel state and federal actions that will be avoided if the amended complaint is allowed, and the case is remanded back to state court." <u>Id.</u> Accordingly, *Plaintiff's Motion to Remand* [Doc. 16] will be granted.

Finally, the Court notes that there remains pending on the docket several motions, which have been fully briefed. [<u>See</u> Docs. 20, 34 and 58]  These motions can be decided by the state trial court upon remand.  <u>See Kromer v. McNabb</u>, 308 F.2d 863, 865 (10th Cir. 1962) (noting that "when a case is so remanded it should remain intact" and "the better practice would be for the trial court not to dispose of other pending motions at all, but to remand with the motions pending").

## IV.   CONCLUSION

Defendant Lockett has failed to demonstrate that Gerald Champion was fraudulently joined as a party.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Remand* [Doc. 16] is **GRANTED** and this case is remanded back to the First Judicial District of the County of Rio Arriba, State of New Mexico;

**SO ORDERED** this 30th day of March, 2013, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief United States District Judge

21